```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
DEMETRIOUS LOVING

        Petitioner,                      ORDER

   -against-                             Civil Action No.
                                         CV-04-1284(DGT)
PEOPLE OF THE STATE OF NEW YORK

        Respondent.

--------------------------------X
```

Trager, J:

Petitioner Demetrious Loving ("petitioner" or "Loving") brings this pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to vacate his conviction, arguing that the evidence adduced at his bench trial was legally insufficient.

For the following reasons, the petition is denied.

**Background**

**(1)**

**Factual Background**

Petitioner was charged with Assault in the Second Degree (N.Y. Penal Law § 120.05(2)), Criminal Possession of a Weapon in the Third Degree (N.Y. Penal Law § 265.02(1)) and two counts of Criminal Possession of a Weapon in the Fourth Degree (N.Y. Penal Law § 265.01(2)). Petitioner and co-defendant, his girlfriend Dora Manning ("Manning"), were tried together at a bench trial before the Honorable Judge Barry Kron. At the bench trial, the

state introduced the following evidence. On July 27, 2000, at approximately 7 p.m., petitioner and Manning encountered complainant Sherrell Holloway ("Holloway") outside of her apartment building on 1-20 Astoria Boulevard in Queens County. Trial Tr. ("Tr.") at 36:24-37:17; 131:20-25. Petitioner and Manning got into an argument with Holloway, and Manning punched Holloway in the face. Tr. at 39:9-14. A fight ensued between the two women, prompting petitioner to break up the fight and push Holloway away. Tr. at 39:15-19; 54:3-18. At some point either before or after Holloway began to walk back into her apartment building, Manning slashed Holloway five times in the arm. Tr. at 75:24-77:5; 92:9-16. Although Holloway did not see a weapon in Manning's hand, she testified she believed it was a razor. Tr. at 39:20-40:9. Holloway's mother saw her daughter's arm bleeding and testified that she saw Manning holding "a knife or a blade." Tr. at 31:13-16.

    Holloway and her mother called the police, who arrived ten to fifteen minutes later to take a report of the incident. Tr. at 33:12-13; 79:1-4. The police officer observed "surface scratches," Tr. at 110:6-8, that "looked like a razor cut," Tr. at 109:19,[1] on Holloway's arm and offered medical attention, which Holloway refused, saying that she would take care of the

---

[1] On cross-examination, the police officer testified that the cuts could have been made with someone's nails. Tr. at 110:11-13.

cuts herself, Tr. at 41:1-3; 107:14-17.

About approximately 7:30 p.m. that same night, Holloway drove with her friend, Melissa Cooper ("Cooper"), to the drug store to get ointment for her cuts. Tr. at 41:13-19. As Holloway was getting out of Cooper's car, a car driven by petitioner pulled up beside her and pinned her right leg between his car and a gate. Tr. at 41:21-24. Manning jumped out of the car and started to assault Holloway. Tr. at 41:25-42:5. When Manning yelled, "she cut me, she cut me," Tr. at 42:5-6, petitioner exited the car and stabbed Holloway once in the arm with a black-handled steak knife, telling her, "I got you, bitch," Tr. at 42:4-23; 85:12-14. Holloway started fighting petitioner and Manning pulled out a razor and cut Holloway's arms. Tr. at 42:7-11; 86:16-19. Manning also bit Holloway's thumb during the fight. Tr. at 43:5-11.

Holloway was bleeding so badly that her "whole outfit was completely drenched in blood," Tr. at 44:21-22, and was in "a lot" of pain, Tr. at 44:23-45:3. Cooper took her to the hospital and then left to bring Holloway's mother to the hospital. Tr. at 44:5-11. When Holloway was told she would have to wait for medical attention, she left the hospital and began to walk home. Tr. at 44:5-9. Holloway's mother, en route to the hospital, spotted Holloway walking back from the hospital and flagged down a police officer. Tr. at 22:24-23:16; 44:10-15. The police

3

officer testified he observed "a very large laceration" on Holloway's arm and that Holloway was complaining of a lot of pain in her leg. Tr. at 108:7-11. The police officer called an ambulance to take Holloway to another hospital. Tr. at 23:14-16; 45:8-17. Holloway received between 15 and 30 stitches at that hospital. Tr. at 45:20-24.

Petitioner presented no witnesses, though his attorney asked the trial judge to take judicial notice of the criminal complaint, which stated that petitioner had a razor knife during the second incident and "cut as opposed to stabbed" Holloway. Tr. at 168:8-24.

Manning took the stand in her defense and testified that she and Holloway used to be friends but had been involved in a long-standing feud since 1994 or 1995. Tr. at 127:16-128:16. Manning described three subsequent incidents, one where Holloway attacked Manning and petitioner, another where Manning believed Holloway had vandalized her car and, finally, where Holloway's sister broke the passenger window of petitioner's car while petitioner and Manning were inside it. Tr. at 130:11-139:18. When petitioner and Manning went to the police station on August 5, 2000 to report this last incident, petitioner and Manning were placed under arrest and searched. Tr. at 96:9-24; 100:23-101:9. A black-handled steak knife was recovered from Manning's pocketbook. Tr. at 96:14-99:14. There was no fingerprint or

blood testing done on the knife.  Tr. at 99:25-100:10.  The detective who recovered the knife testified that he did not observe blood on the knife when he recovered it.  Tr. at 100:5-7.

**(2)**

**Procedural Background**

On May 30, 2001, petitioner was adjudicated a second felony offender and convicted of all counts in a bench trial in New York State Supreme Court, Queens County.  Tr. at 188:18-189:17.  On June 13, 2001, petitioner was sentenced to concurrent prison terms of three years on the second-degree assault count, two to four years on the third-degree criminal possession of a weapon count and two one-year terms on the fourth-degree weapon count. June 13, 2001 Sentencing Tr. at 6:1-7.

On May 12, 2002, petitioner, by counsel, appealed his conviction on the grounds that the verdict was against the weight of the evidence and that the state presented insufficient evidence to establish petitioner's guilt beyond a reasonable doubt.  Petitioner's conviction was unanimously affirmed by the Appellate Division, Second Department on February 24, 2003. People v. Loving, 302 A.D.2d 607, 755 N.Y.S.2d 623 (2d Dep't 2003).  Specifically, in denying petitioner's appeal on the merits, the Appellate Division found that "the verdict of guilt was not against the weight of the evidence" and that the evidence

"was legally sufficient to establish the defendant's guilt beyond a reasonable doubt." Id. at 607, 755 N.Y.S.2d at 623. Leave to appeal to the New York State Court of Appeals was denied on May 27, 2003. People v. Loving, 100 N.Y.2d 540, 793 N.E.2d 420, 763 N.Y.S.2d 6 (2003).

On November 13, 2003, petitioner filed a pro se motion to vacate the judgment in New York Supreme Court, Queens County, pursuant to New York Criminal Procedure Law ("CPL") § 440.10, arguing that the trial court's verdict was against the weight of the evidence. The motion was denied as petitioner had already raised this claim on direct appeal and it had been rejected by the Appellate Division.

Petitioner filed a pro se petition for writ of habeas corpus on February 8, 2004, arguing that: 1) "the judge erred or didn't notice the weight of the evidence at trial" because a police officer testified that the cuts on Holloway's arm "appeared to be consistent with her being injured by someone's nails rather than a weapon"; 2) the detective who recovered a steak knife from petitioner's co-defendant "never requested laboratory testing [] [be] performed on the knife"; 3) "the medical records do[] not support the complainant['s] testimony at trial because they "do [] not say anything about any stab wound" and "fail[] to mention anything about stitches"; and 4) "an adverse inference should have been drawn" by the state's failure to call Melissa Cooper,

6

an eyewitness, to testify. Pet. under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Petition") at 5-6.[2]

The state filed an opposition, conceding that the petition was timely and that the claims asserted in it have been exhausted. Mem. of Law in Opp. to Pet. for a Writ of Habeas Corpus ("Mem. in Opp.") at 7-9. However, the state argues that petitioner's claims are meritless because there was legally sufficient evidence to support his conviction and the appellate division's holding that petitioner's conviction was supported by legally sufficient evidence was not contrary to, or an unreasonable application of, Supreme Court law.

Petitioner failed to submit a reply to the state's opposition.

---

[2] Many of these claims are couched as "weight of the evidence" challenges, which are not cognizable under habeas review. Nevertheless, because petitioner is pro se, these claims will be construed as "insufficiency of the evidence" claims. See, e.g., Hernandez v. Conway, ___ F. Supp. 2d ___, No. 03-CV-0852, 2007 WL 1213334, *5 (W.D.N.Y. Apr. 25, 2007) (recognizing that complaints of pro se petitioners are to be considered liberally in their favor and, therefore, construing pro se petitioner's "weight of the evidence" claims as "insufficiency of the evidence" claims); Davis v. McLaughlin, 122 F. Supp. 2d 437, 441 (S.D.N.Y. 2000) (same).

**Discussion**

**(1)**

**Standard of Review**

When reviewing a habeas corpus petition by a prisoner challenging a state court conviction that was adjudicated on the merits, federal courts apply a deferential standard of review under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d).  Where, as here, petitioner's claim has been adjudicated on the merits in state court, habeas relief will be available only if the petitioner can show that the state court decision: 1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or 2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court adjudication is "contrary to" clearly established federal law either if the state court "'applies a rule that contradicts the governing law', or 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a different result from [Supreme Court] precedent.'" Santana v. Poole, No. 03-CV-3946, 2006 WL 3483923, at *4 (E.D.N.Y. Nov. 6, 2006) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  A state court's decision involves an "unreasonable application" of

clearly established federal law if the state court "identifies the correct governing legal principle from the [Supreme] Court's cases, but unreasonably applies [that principle] to the facts" of a prisoner's conviction. Id. at *4 (quoting Williams, 529 U.S. at 407-08). Determination of factual issues made by a state court "shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Thus, the Appellate Court's decision that the evidence presented at petitioner's trial was legally sufficient to sustain his conviction must be deferred to unless it is determined that that decision was an unreasonable application of, or contrary to, clearly established federal law, as determined by the United States Supreme Court.

**(2)**

**Petitioner's Sufficiency of the Evidence Claim**

**a. Standard**

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case by requiring proof beyond a reasonable doubt of every element of the crime with which he is charged. See Jackson v. Virginia, 443 U.S. 307, 315 (1979). In a § 2254 challenge to the evidentiary sufficiency of a state

9

criminal conviction, the federal habeas court must view the evidence in the light most favorable to the state and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002) (emphasis in original) (quoting Jackson, 443 U.S. at 319). Habeas corpus relief is only warranted when the record is "totally devoid of evidentiary support," Gonzalez v. Reiner, 177 F. Supp. 2d 211, 218 (S.D.N.Y. 2001), and the reviewing court finds that no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial, Jackson, 443 U.S. at 319.

A habeas court must defer to the credibility assessments made by the fact-finder and may not "make its own subjective determination of guilt or innocence." Jackson, 443 U.S. at 319 n.13. See also Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) ("[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on [habeas] appeal"). In fact, "[w]here the record supports conflicting inferences, the court 'must presume ... that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" Santana, 2006 WL 3483923, at *7 (quoting Jackson, 443 U.S. at 326). Thus, a petitioner bears a "very heavy burden" in convincing a federal

habeas court to grant a petition on the grounds of insufficient evidence. Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002) (citations omitted). See also Francischelli v. Potter, No. 03-CV-6091, 2007 WL 776760, at *8 (E.D.N.Y. Mar. 12, 2007) ("Given that the reviewing court may not substitute its judgment for that of a rational jury, the burden of a convicted individual in challenging the sufficiency of evidence upon which he was convicted has often been described as a heavy one.").

**b. Analysis**

In order for petitioner to sustain his insufficiency claim, he must show that no rational trier of fact could have found proof of guilt beyond a reasonable doubt that his actions fulfilled all the elements necessary to commit assault in the second degree and criminal possession of a weapon in the third and fourth degrees and, therefore, the Appellate Division's decision affirming the conviction was either contrary to, or an unreasonable application of, Supreme Court precedent. Francischelli, 2007 WL 776760, at *8.

When considering a challenge to a state conviction based upon the sufficiency of evidence, a federal habeas court must look to state law to determine the elements of a crime. Ponnapula, 297 F.3d at 179. To convict petitioner on a charge of second degree assault under New York Penal Law section 120.05(2),

the state needs to prove beyond a reasonable doubt that petitioner intentionally caused "physical injury"[3] to another person "by means of a deadly weapon or a dangerous instrument."[4] N.Y. Penal Law § 120.05(2). Here, testimony given at trial established that petitioner stabbed Holloway in the arm with a black-handled steak knife while yelling, "I got you, bitch!"; that the stabbing caused bleeding and pain; and that the resulting wound required stitches and caused scarring. Corroborating this testimony were Holloway's medical records, the need for fifteen to thirty stitches, the judge's observation of Holloway's scarring and the police officer's testimony that he observed a large laceration on Holloway's arm and heard her complain of leg pain before Holloway went to the hospital. Finally, the black-handled steak knife, which Holloway testified petitioner stabbed her with, was recovered in Manning's purse approximately two weeks after the attack. Viewing this evidence in the light most favorable to the state, the fact-finder could reasonably infer that petitioner intentionally stabbed Holloway in the arm with a dangerous weapon and caused a physical injury,

---

[3] Under New York Penal Law, "physical injury" is defined as "impairment of physical condition or substantial pain." N.Y. Penal Law § 10.00(9).

[4] Under New York Penal Law, a "dangerous instrument" is defined as "any instrument . . . which, under the circumstances in which it is used. . . is readily capable of causing death or other serious physical injury." N.Y. Penal Law § 10.00(13).

which required up to thirty stitches.  Thus, there was legally sufficient evidence to convict petitioner of second degree assault.  See, e.g., People v. Easterling, 191 A.D.2d 579, 579, 594 N.Y.S.2d 805, 806 (2d Dep't 1993) (evidence legally sufficient to support conviction of assault in the second degree where victim testified that she was stabbed multiple times and suffered "a lot of pain," victim displayed scars to the jury as a result of the assault and state introduced victim's hospital records).

Furthermore, there was legally sufficient evidence to find petitioner guilty of two counts of criminal possession of a weapon in the fourth degree[5] and one count criminal possession of a weapon in the third degree.  A person is guilty of criminal possession of a weapon in the fourth degree when "[h]e possesses any . . . dangerous knife, . . . razor, . . . or any other dangerous or deadly instrument or weapon with intent to use the same unlawfully against another."  N.Y. Penal Law § 265.01(2).  Here, in order to make out both counts of fourth degree criminal possession of a weapon, the state had to prove that petitioner possessed both the razor allegedly Manning used to cut Holloway, via accomplice liability, as well as the black-handled steak

---

[5] Both counts of criminal possession of a weapon in the fourth degree stem from petitioner's and Manning's second attack on Holloway.  One of the counts is for criminal possession of the razor; the other is for criminal possession of the steak knife.

13

knife petitioner allegedly used to cut Holloway. First, as to possession of the razor, petitioner's participation in Manning's attack on Holloway was sufficient to show that petitioner acted as Manning's accomplice, and, therefore, was liable for criminal possession of the razor in the fourth degree. Testimony established that, during the second incident on July 27, 2000, petitioner pinned Holloway's leg against the fence with his car, enabling Manning's attack on Holloway. This is sufficient to show that petitioner shared Manning's intent to injure Holloway and encouraged and aided Manning's attack. See, e.g., People v. Long, 294 A.D.2d 614, 616, 741 N.Y.S.2d 592, 594 (3d Dep't 2002) (finding evidence that defendant pushed victim toward garage and held garage door closed while co-defendant beat victim sufficient to establish defendant's guilt of assault). Furthermore, as to possession of the knife, testimony at trial established that petitioner was prompted to get out of the car after his girlfriend complained Holloway "got" her; that petitioner actually used the knife to stab Holloway; and that petitioner stabbed Holloway while stating, "I got you, bitch!". This evidence is legally sufficient to support the conclusion that petitioner possessed a knife with intent to harm Holloway. See, e.g., People v. Perez, 45 N.Y.2d 204, 209, 380 N.E.2d 174, 176, 408 N.Y.S.2d 343, 345 (1978) ("[I]t is not necessary to prove a defendant's possession of a weapon with intent to use it against

a person unlawfully by evidence independent of the defendant's conduct during the commission of a greater crime."). From this evidence, the judge sitting as fact-finder could easily conclude that petitioner had been in possession of both the knife and the razor and that he intended to use them unlawfully against another person, thus, establishing his guilt of the two weapon-possession charges in the fourth degree.

Finally, a person is guilty of criminal possession of a weapon in the third degree when "[s]uch person commits the crime of criminal possession of a weapon in the fourth degree . . and has been previously convicted of any crime." N.Y. Penal Law § 265.02(1). The state introduced uncontroverted evidence that petitioner had been previously convicted of a crime. Tr. at 117:22-119:5. As discussed above, there was sufficient evidence to find petitioner guilty of criminal possession of a weapon in the fourth degree. Thus, the state introduced sufficient evidence for the judge sitting as the trier of fact to convict petitioner of criminal possession of a weapon in the third degree.

None of petitioner's arguments change this result. Petitioner's first and third arguments - that an officer testified on cross-examination that the cuts on Holloway's arms could have been made by a person's nails and that the medical records failed to mention a stab wound - do not alter the fact

that the judge sitting as fact-finder could readily conclude that petitioner stabbed Holloway with a steak knife and that Manning, acting in concert with petitioner, cut Holloway with a razor. The trial judge saw the hospital medical records, see Tr. at 45:25-46:10, observed the scarring on Holloway's arms, see Tr. at 38:15-39:7; 42:21-43:4; 43:16-24; 188:12-17 ("the injuries on [Holloway's] arm were indeed from my observation of them significant injuries involving permanent scarring and obvious injuries of consequence to still have the physical manifestation showing this amount of time after the injuries"), and heard testimony about the attacks and about Holloway's injuries. Ultimately, the trial judge made credibility assessments and determined that the state had met its burden. See United States v. Strauss, 999 F.2d 692, 696 (2d Cir. 1993) (citations omitted) (noting that the fact-finder "is exclusively responsible for determining a witness' credibility"); Gruttola v. Hammock, 639 F.2d 922, 928 (2d Cir. 1981) ("The jury chose to believe the State's witnesses, despite the inconsistencies in the evidence and the character testimony. We cannot say that no rational jury could have found guilt beyond a reasonable doubt on all the evidence.").

Petitioner's second argument - that there was no laboratory testing preformed on the steak knife recovered from petitioner's co-defendant - does not render the evidence offered at trial

legally insufficient to support petitioner's conviction.  The trial judge heard testimony from Holloway that petitioner stabbed her with a black-handled steak knife and that same knife was recovered from Manning, petitioner's girlfriend, two weeks after the attack while petitioner was with her.  This presented enough circumstantial evidence for the trial judge to infer that the black-handled steak knife that was used to stab Holloway was the same black-handled steak knife recovered from Manning, regardless of the lack of "testing."  See, e.g., United States v. Sureff, 15 F.3d 225, 228 (2d Cir. 1994) (recognizing that "guilt beyond a reasonable doubt may be established entirely by circumstantial evidence"); Strauss, 999 F.2d at 696 (citations omitted) ("[A] conviction may be based upon circumstantial evidence and inferences based upon the evidence.").  Furthermore, the two-week delay between Holloway's stabbing and petitioner's and Manning's arrest easily explains why the detective did not observe any blood on the knife at the time of arrest.

Finally, the trial judge himself directly addressed petitioner's final argument - that "an adverse inference should have been drawn" by the state's failure to call Melissa Cooper, an eyewitness, to testify.  The trial judge specifically mentioned that he considered the fact that Cooper was not called to the stand when rendering his decision, but, nonetheless, found petitioner guilty of all counts.  Tr. at 187:17-20 ("I also take

17

into account that it would have been natural for Ms. [] Cooper to be a witness in this case. And that she was not called. And that is factored in as well."). Ultimately, so long as the evidence at trial establishes "any valid line of reasoning and permissible inferences [that] could lead a rational person" to convict, then the conviction will survive sufficiency review. People v. Williams, 84 N.Y.2d 925, 926, 644 N.E.2d 1367, 1367, 620 N.Y.S.2d 811, 811 (1994). This was the case here.

Thus, petitioner has failed to prove that the record is devoid of evidence to support the essential elements of his convictions and, thus, failed to show that the Appellate Division's conclusion that there was legally sufficient evidence to support his conviction was contrary to clearly established federal law or that it involved an unreasonable application of that law. Petitioner, therefore, has no basis for habeas relief. 28 U.S.C. §§ 2254(d). As such, petitioner's petition for writ of habeas corpus is denied. The Clerk of the Court will enter

judgment accordingly and close the case.


Dated:     Brooklyn, New York
           June 21, 2007

                                        SO ORDERED:


                                        _____/s/_____

                                        David G. Trager
                                        United States District Judge